OPINION
{¶ 1} On July 22, 1998, appellant, Stan Walker, and appellee, Charlotte Walker, were granted a decree of dissolution and a decree of shared parenting plan, incorporating the parties' separation agreement and shared parenting plan. These documents provided for the parties to have equal time with their children, equally divide expenses for the children, and granted appellee a deviation from the child support guidelines. At the time of the dissolution, the child support was calculated with appellant's income at $103,000 and appellee's income at $29,000. The parties then agreed to an approximate forty-five percent deviation. Appellant was required to pay $950 per month in child support.
 {¶ 2} In July of 2001, appellee sought to increase her child support through the Delaware County Child Support Enforcement Agency (hereinafter "DCCSEA"). By decision dated September 10, 2001, the hearing officer for DCCSEA considered appellant's income plus bonuses and recalculated appellant's child support obligation in the amount of $557.94 per month per the worksheet. Appellee objected and the matter proceeded to the Court of Common Pleas for Delaware County. The parties submitted the matter on affidavits.
 {¶ 3} By decision filed January 2, 2002, the magistrate found appellant was not entitled to a downward deviation, and ordered appellant to pay $1,750.65 per month in child support and poundage. Appellant filed objections on January 16, 2002. By final judgment entry filed March 15, 2002, the trial court approved and adopted the magistrate's decision.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 {¶ 5} "THE TRIAL COURT'S CALCULATION OF CHILD SUPPORT WAS CONTRARY TO LAW IN THAT APPELLANT'S BONUSES WERE TREATED AS RECURRING INCOME AND WERE NOT AVERAGED."
II
 {¶ 6} "THE TRIAL COURT ABUSED ITS DISCRETION IN THAT THERE WAS NO DEVIATION GRANTED AS TO THE CHILD SUPPORT AS UNDER THE CURRENT ORDER, APPELLANT PAYS FULL GUIDELINE SUPPORT, APPELLANT PAYS ONE-HALF OF THE CHILDREN'S EXPENSES AND APPELLANT HAS THE CHILDREN IN HIS HOME ONE-HALF THE TIME."
III
 {¶ 7} "THE TRIAL COURT'S ORDER IS CONTRARY TO LAW IN THAT IT RELIEVES THE APPELLEE OF ANY FINANCIAL RESPONSIBILITY FOR THE CHILDREN AND PLACES THE ENTIRE FINANCIAL OBLIGATION ON APPELLANT."
IV
 {¶ 8} "THE DECISION OF THE TRIAL COURT IS AN ABUSE OF DISCRETION AND CONTRARY TO LAW IN THAT IT IS NOT IN THE BEST INTEREST OF THE CHILDREN AND IN INAPPROPRIATE UNDER THE CIRCUMSTANCES OF THIS CASE."
 {¶ 9} At the outset, we note the parties have prepared and filed an "Agreed Statement as to the Record on Appeal" on April 23, 2002. App.R. 9(C) requires such a statement to be approved by the trial court. No such approval is on this agreed statement. After a review of said statement, we find it is merely a refiling of the parties' affidavits, letters and other memoranda that were already included in the record of the case. However, although a proper App.R. 9(C) statement was not filed, we find the record adequately reflects the evidence reviewed by the trial court because no testimony was taken in this case.
 I {¶ 10} Appellant claims the trial court erred in its calculation of his gross income. In particular, appellant claims the trial court erred in failing to average his performance bonus over a three year period, and erred in including signing bonuses as a recurring event. We agree in part.
 {¶ 11} The standard of review of an appellate court in a domestic relations matter concerning child support is abuse of discretion. Boothv. Booth (1989), 44 Ohio St.3d 142. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 12} It is appellant's position that the trial court should have placed appellant's base salary on line 1a of the guideline worksheet and should have averaged his bonuses, overtime and commissions for line 1b and summed the two amounts to arrive at his "gross income."
 {¶ 13} In calculating the amount of child support to be paid, a trial court shall consider the parents' current and past personal earnings. R.C. 3119.05(A). R.C. 3119.01(C)(10) defines "personal earnings" as "compensation paid or payable for personal services, however denominated, and includes wages, salary, commissions, bonuses, draws against commissions, profit sharing, vacation pay, or any other compensation." Regarding overtime, commissions and bonuses, R.C.3119.05(D) states the following:
 {¶ 14} "(D) When the court or agency calculates the gross income of a parent, it shall include the lesser of the following as income from overtime and bonuses:
 {¶ 15} "(1) The yearly average of all overtime, commissions, and bonuses received during the three years immediately prior to the time when the person's child support obligation is being computed;
 {¶ 16} "(2) The total overtime, commissions, and bonuses received during the year immediately prior to the time when the person's child support obligation is being computed."
 {¶ 17} In its final judgment entry filed March 15, 2002, the trial court found appellant's base salary to be $81,484 plus $47,708.65 in commissions. It is appellant's contention that the "commission" amount should have been averaged over the past three years thereby reducing his gross income.
 {¶ 18} In his affidavit, appellant admitted he earns a "target payout" bonus tied to the amount of business he generates each quarter. The bonuses are paid a quarter behind. Appellant states he received no bonuses in 1999 or 2000 when he was with a different employer. The "bonus" plan was explained as follows in a September 28, 2000 letter sent to appellant from his employer, PNC:
 {¶ 19} "You will be eligible to participate in the PNC Leasing, LLC Middle Market performance-based incentive compensation plan with quarterly awards based on the attainment of specific performance goals, objectives and results. Under that plan, subject to your continued employment with PNC on the date the award is paid and your satisfactory performance, your incentive award for the year 2000 only will be the greater of $20,000.00 or the payout derived under the plan. The $20,000.00 minimum will be paid out at the end of December. * * * If your incentive awards under the plan is less than $20,000.00, up to a maximum of $10,000.00 will be reconciled against your incentive plan performance during 2001."
 {¶ 20} Although appellant tacitly admits the incentive compensation plan will continue quarterly, he argues it is too tenuous to be included as a whole in his gross income. Benefits that are excluded from gross income include "[n]onrecurring or unsustainable income or cash flow items." R.C. 3119.01 (C)(7)(e). Subsection (C)(8) defines "nonrecurring or unsustainable income or cash flow item" as follows:
 {¶ 21} "* * * an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis. `Nonrecurring or unsustainable income or cash flow item' does not include a lottery prize award that is not paid in a lump sum or any other item of income or cash flow that the parent receives or expects to receive for each year for a period of more than three years or that the parent receives and invests or otherwise uses to produce income or cash flow for a period of more than three years."
 {¶ 22} From appellant's own affidavit and the letter from his employer, we find clearly the incentive compensation plan is ongoing. The amount of $47,708.65 for 2001 was not nonrecurring or unsustainable income.
 {¶ 23} Appellant argues the amount should have been averaged over three years, the year he received the amount, 2001, and 2000 and 1999, the years he did not receive incentive compensation. We disagree. Appellant did not work for his present employer in 2000 and 1999. It would be inconsistent to compare a current compensation benefit package against a previous employer's benefit package.
 {¶ 24} Based upon the evidence presented to the trial court, we find no error in computing the $47,708.65 incentive compensation in gross income.
 {¶ 25} Pursuant to the September 28, 2000 letter from PNC, appellant received a $10,000 signing bonus in October of 2000 when he signed on with PNC and a $20,000 guaranteed incentive payment payable at the end of December, 2000. We find these payments were in fact a nonrecurring benefit and should not have been considered in gross income.
 {¶ 26} Assignment of Error I is granted in part as to the $30,000 amount and denied in part as to the $47,708.65. Given this ruling, the trial court is ordered to recalculate the amount of child support due.
 II, III, IV {¶ 27} These assignments of error challenge the trial court's denial of a request to deviate from the child support guidelines and the trial court's failure to reduce appellant's child support because of the shared parenting agreement. Appellant claims the trial court's decision was an abuse of discretion, contrary to law and not in the best interests of the children. We disagree.
 {¶ 28} The crux of appellant's argument is that the trial court did not consider the amount of time the children spend in each parent's home and the expenses which result from that 60/40 split. Appellant also argues the trial court did not consider the extra expenses that he spent on behalf of the children.
 {¶ 29} We have previously held that there is no bright-line test for determining support deviation in a shared parenting situation rather, we have embraced the theory that such matters are to be determined on a case-by-case basis:
 {¶ 30} "Therefore, until such time as the General Assembly provides more guidance, such as a statutory `parenting time adjustment' plan, we hold that a trial court maintains the discretion whether to accommodate the best interests of children under shared parenting plans by applying either a Weinberger-type offset formula, or calculating a guideline order using the `sole custody calculation with deviations' method as in the case sub judice. Review of either method would remain subject to a standard of review of abuse of discretion." French v. Burkhart (May 22, 2000), Delaware App. No. 99CAF07038.
 {¶ 31} R.C. 3119.24(A) gives discretion to the trial court in setting child support in shared parenting situations:
 {¶ 32} "(A)(1) A court that issues a shared parenting order in accordance with section 3109.04 of the Revised Code shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in section 3119.022 of the Revised Code, through the line establishing the actual annual obligation, except that, if that amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount.
 {¶ 33} "(2) The court shall consider extraordinary circumstances and other factors or criteria if it deviates from the amount described in division (A)(1) of this section and shall enter in the journal the amount described in division (A)(1) of this section its determination that the amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting its determination."
 {¶ 34} When ruling on the objections, the trial court addressed the issues presented by appellant's arguments. The trial court found there was a disparity of income between the parties and a disparity regarding their standard of living. The trial court found appellant benefitted from his new wife's $70,000 a year salary. We find this all to be in line with the factors set forth in R.C. 3119.24(B), including appellant's present wife's income as it qualifies under R.C. 3119.24(B)(4) as "[a]ny other circumstances the court considers relevant." Appellant's income as reflected by our ruling in Assignment of Error I is $129,192.65 and appellee's is $40,000. It is unrealistic to admit that the children would have a level standard of living given the disparity of income of the parents.
 {¶ 35} Appellant, via his own affidavit, offers a litany of moneys expended for the children, their schooling and extra-curricular activities. The original decree of dissolution provided for the expenses to be shared. By this presentation, it appears appellant argues he paid a disproportionate share of those expenses. The expenses for the three children are for a three year period and amount to an approximate average of $578 per year per child. Given appellant's disposable income during this period, we find such an argument to be de minimis.
 {¶ 36} Based upon all of the factors enumerated in R.C. 3119.24, we find the trial court did not err in declining to deviate. In fact, it was far more in the best interest of the children to not deviate from the guidelines.
 {¶ 37} Assignments of Error II, III and IV are denied.
 {¶ 38} The judgment of the Court of Common Pleas of Delaware County, Ohio, Domestic Relations Division, is hereby affirmed in part and reversed in part.
By Farmer, J., Hoffman, P.J. and Wise, J. concur.
topic: child support determination including performance based income signing bonus